All set, Mr. Baird? Very good. Mr. Fuglesang, you can proceed when you wish. Your Honor, briefly on the background of the case, we are the insurer of Nimi from about 82 to 86, except for two months. Prior to all the rulings here, the Court found- Can you speak up a little bit there, pull the mic a little closer to you?  On summary judgment, the Court found that North Pacific Oregon Auto was the insurer from 68 to 72. Then that was reconsidered, and one issue was left open, and that is whether or when the particular sites, when and if the particular sites became the subject of their insurance. The Court also decided earlier on that there would be pro rata allocation among the insurers. The appropriate issue was decided. Then on the eve of trial, when we were about to try the issues with North Pacific, North Pacific and Oregon Auto settled with Nimi for a minor sum in comparison to what we've been paying in defense costs. And- 200,000, right? Pardon me? 200,000. Correct, Your Honor. We had been paying all defense costs up until the end of the Farmers Fund. We are still paying defense costs. We're still defending Nimi, and we're well into the millions, so- Well, did you get the order? Yes, Your Honor. Okay. I'm getting there. Okay. Because we know the facts. Okay. We wouldn't- Let me get directly to that. Nimi requested a Rule 54b fine. We actually challenged that. And argued against it. And as I read the Court's order, one of the reasons we raised was could this appeal or could this issue be rendered moot if Nimi later lost the issue of breach of cooperation for entering into the settlement and then rescinded. And we didn't think we could appeal that issue because we didn't think we could get abuse of discretion. And the reason is, is if you read the agreement, Nimi's right to rescind arises only after there's a final judicial determination, after all appeals. They have to exhaust all appeals. So if we didn't have this appeal now and we went through the rest of the case and we won the breach of cooperation clause, we would still be appealing this issue. They would be appealing that issue. And this Court would still have to decide both issues because nobody can rescind until this Court has made its decision and all appeals are exhausted. So I know this is Judge Moskowitz's basic question, but I'm still a little uncertain. And the issue of cooperation is still awaiting the outcome of this appeal? Is that what happened or that's been decided? No, Your Honor. The issue of breach of cooperation is still before the trial court. It is. And it is in abeyance pending the outcome of this matter. Is that right? More or less. Okay. Where's the right to rescind? Do you have that line? Can I take a look at the line? It's section 4.2 of the settlement agreement, which is volume 3 of the excerpts of the record. And it reads, Nemi Oil shall have the right to rescind this agreement in the event Nemi Oil is found in the coverage litigation through a final judicial determination including exhaustion of any and all appeals. And any and all appeals to have forfeited or otherwise lost its rights because of the cooperation clause. So though we argued all this below, I don't think I can meet the appeals discretion standard to prevent this from being appealed because we do have an issue, a legal issue, that's not going to be, that's still going to have to be determined at some point. Well, it seems to me that in this deal between Nemi, is that what they call them? Nemi Oil? Nemi Oil, Your Honor. Yes. And the, we'll call them Oregon Automobile Insurance Company. In their deal where they've settled it for $200,000, Nemi Oil can get out of that If you were to win against Nemi Oil in your cooperation claim, then you'd have no obligation to pay anything to Nemi Oil. Isn't that right? No, Your Honor. We've already paid. I know. You've already paid a lot of something. Maybe you'd have some rights to get money back from them. Not on defense costs, Your Honor. Pardon me? I do not think, as of the date of the agreement, maybe, but all that we paid before. Okay. But wouldn't Nemi Oil, if they have no further rights to recover money from you, then they'd have to say, well, then we'll just accept the $200,000 we got from Oregon Auto, and we're happy with that. Don't you think that instead what they would do is say, well, we're going to avoid this, and we've got a lot more other damages, and we want to get them from Oregon Auto? And so whether you could or could not recover anything back from Oregon Auto, would it really make any difference at that point? Well, two things there, Your Honor. First off, we have a claim against Oregon Auto for everything that's been spent that we would not recover back. Your contribution claim. Right. We've already spent a lot. The issue you raise is timing. They cannot exercise that right of rescission until, after all, appeals are exhausted. Okay. Which means if we go to the end of the case with this issue still down there, we would be appealing both issues. Yeah. That's right. Until this Court decides both of those issues, until this case is completely over, nobody can rescind. Well, that's the point, I think. Yeah. So if we play it out, say we were to, you know, the case were all to be together. In other words, we were to say that in proper Rule 54B certification. It goes back. They litigate the whole case. They've already decided one part of it. And so now they say there's a right to contribute, that there's a failure on NME to cooperate, and so therefore there's no longer any obligation to your client. By your client, the NME, excuse me. Right? Say that's what occurred. Now, NME couldn't withdraw from the settlement, you're saying, until that decision is appealed in final. Correct. There's no discretion? Not – well, we had arguments about that, but it looks like from the way it reads, it just says that they have a right after final judicial determination, including exhaustion of any and all appeals. Okay. So then what happens is the whole case comes up to us, and maybe we affirm on – you know, we'll just take it one tact or another. We affirm on the issue of lack of cooperation, and we do whatever we're going to do on the claim that's before us now. And then the case is over. You're saying that NME can then say, well, I back out of the agreement. Okay. Let's assume for the moment we affirm the district court on the settlement issue, saying the settlement precludes contribution. Okay? Now, so you have that judgment, and the judgment also is that NME – you are not liable to NME. Case over, cert denied, no involvement, nothing. It's final. And now NME can say, well, you know what, we vacate the settlement agreement. Correct. Okay. And then you're still – you still have no claim. Your case is final. There's a final judgment against Oregon Auto, where you have no right to collect from Oregon Auto, and then there's a vacation of the settlement agreement, which is the linchpin of that final decision between you and Oregon Auto.  That's a good question, Your Honor. Does it rule – you say there's a new fact, Rule 60, you know, vacate the judgment? I haven't thought through that whole thing, but, you know, once the whole case is over, I've assumed we were done. But then if they then both rescind after that or one of them rescinds after that, I haven't figured out what happens to us. You're saying it doesn't make a difference whether we did it piecemeal or did it together. The same thing can happen. Yes. But in fact, again, arguendo, were we to reverse the district court and conclude that the district court had incorrectly construed the State statute and, in effect, rendered it meaningless, then regardless of whether there was an ultimate rescission of the settlement agreement, you would still have the right to go against Oregon Auto, right? Most assuredly, Your Honor. Okay. It's a pretty complex issue. In effect, even if you won your case for the lack of cooperation from NIMI, theoretically, you wouldn't owe NIMI anything, so you wouldn't have had to pay anything, but you've already paid it anyway, haven't you? Well, if we won our breach of cooperation clause case, we would not owe NIMI, of course, anything from that point on. The issue would be past costs at that point and particularly past costs from the time they entered into this agreement to now. But I don't see any way we can get back from NIMI the past costs that existed before the settlement. We can't get from Oregon Auto or those past costs in any event. You'd still have the right to get those if we were to reverse the district court. Right. Both past and future, but Oregon Auto has paid no defense costs and they basically have no obligations to pay any defense costs now based on the district court's ruling. And if the district court were reviewed, excuse me, reversed, though, you would still have a right of contribution from Oregon Auto with respect to the defense costs, right? Correct, Your Honor. Yeah. All right. You wanted to save four minutes. You want to take that opportunity now to think about it, and we'll hear from your learned colleague for Oregon Auto, and that is Mr. Baird. Good morning, Your Honors. May it please the Court, Gregory Baird, counsel for Oregon Auto and North Pacific. I will collectively refer to them as Oregon Auto if that pleases you. First, with respect to the jurisdictional issue, the basis for our concern in seeking immediate appeal on this issue was as follows. What we wished to avoid as Oregon Auto was a scenario where we would be Fireman's Fund would then proceed to a factual determination before a jury on the issues which would guide whether or not Fireman's Fund has coverage and the extent thereof. Those issues principally in these kind of cases would be the timing of groundwater contamination and the amount of damages which take place during the relative insurance policy periods. Judge Mossman properly considered and determined that if he did not grant immediate review of this issue, Oregon Auto would stay dismissed and would not be participating in that trial. Fireman's Fund and NAMI then would have a determination before a trier of fact, a different one than ultimately Oregon Auto would face if he reversed, creating the very real possibility that you would have inconsistent judicial determinations on the facts which guide the obligations of the respective insurers here. That was the principal concern. I also note for your Honor's attention, at the time that Judge Mossman made this determination and continuing to this date, the claims with respect to NAMI and Fireman's Fund are stayed. Those claims were stayed pursuant to the Wilson's distributing line of cases which restrict an insurer's ability to seek declaratory relief from an insured while the underlying action is pending. The underlying proceedings by the DEQ, the Oregon regulatory entity requiring them to take steps to clean up the pollution, those cases are ongoing. And so Judge Mossman has stayed and the matters continue to be stayed, the claims between NAMI and Fireman's Fund. So we have an opportunity at this time to resolve legally the effect of the non-contribution rights and allow Fireman's Fund and Oregon Auto to have an answer to that and have their respective obligations determined by the same ponder of fact. But do you agree that NAMI cannot get out, no matter what happens in the district court, NAMI cannot get out of the settlement agreement? It would have to come to the Court of Appeals and have a finality? NAMI's right is expressly contingent on exhaustion of all appeals. And so there will never be a scenario before Judge Mossman, the district court judge, where NAMI could exercise its right of appeal. So what would have to happen is if you were to prevail here and the firemen's were to prevail against NAMI in the district court and all that became final, then firemen's and then NAMI withdrew from the settlement, then at that point firemen's would have to make a motion under Rule 60 to vacate the judgment on the grounds of new evidence. That is that the settlement is no longer valid. I believe that's correct. That would be the remedy. Correct, Your Honor. I also note that if we take the circularity issues that are presented by these rights of rescissions to their ultimate conclusion, A, if firemen's fund ultimately is found not to have its contribution claims barred substantively, firemen's fund will have sustained no harm to support a cooperation clause defense. I also note that the premise that the insured entering into a settlement of one of its contractual rights with insured A acting as somehow being a violation of the duty to cooperate under a separate insurance contract with a separate insurer is not supported by Oregon law. But that matter will need to be decided by the district court. Can we just focus for a moment on this particular appeal? These, of course, are all interrelated and this is all important in our evaluation. But let's talk for a moment about the amendment to the Oregon statute. Looking at it with fresh eyes, it seems to me that section 465.480 sub 4, its exclusion from contribution for many insurer who settled, basically renders 465.475 meaningless. Do you disagree with that? And if so, why? And specifically, which aspect of 465.475 are you referring to, Judge Schmidt? Okay. Let me see if I can pull that up here. Okay. I'm embarrassed to say I don't think I included that in these materials. I'm sorry about that. I have a copy here. There we go. Okay. Okay. Specifically, what I'm talking about, 465.4804 automatically excludes from contribution any insurer who settles with the insured and therefore is no longer in quotes liable or potentially liable. So under those circumstances, then the 465.475 has no meaning because that is the, that section, well, let me look more carefully at the language because I'm not being very articulate here and I apologize. Judge Schmidt, are you referring to Chapters Law 799, the retroactivity provision? Yes, that's correct. Okay. I apologize. That's where we were thinking. That's exactly what I was talking about. I'll be happy to comment on that section. And that's actually subsection 5, sub 4, Oregon Chapters Law 2003, Chapter 799. Maybe the confusion is that I'm not using the right nomenclature for you. Thank you. Your Honor, that provision in our position is a retroactivity clause. Right. The first section of it defines when the effective date of the provision will be. Then it has three exceptions, two of which are not at issue here. The one at issue raised by Fireman's Fund is Subpart 5.4. Subpart 5.4 defines a very specific subset where the ECAA substantively will not apply. And that subset is cases in which the insurer and the insured, A, are in litigation, B, where final judgment as to all claims has not been entered, and C, where at least one but not all insurers has entered into a settlement with the insured prior to the effective date of the statute. That is the sole reach of that provision. It is our position that this provision, inserted by an Oregon lawyer, John DiLorenzo, and done in connection with another case I was involved in, the ICN Pharmaceuticals case, is done simply to state that there were certain insurers involved in litigation prior to the effective date of the ECAA who entered into settlements with its insured and entered those settlements with an understanding as to what the law would be on the effect of those agreements. This provision says the ECAA shall not apply to those prior reach settlements. The purpose isn't to state anything in the negative, but rather to simply say, the insurers who settled prior to enactment of the ECAA need not worry about its retroactive application and need not reconsider their relative rights or exposures in contribution under the agreements reached before then. That is our position. Okay. So I'm looking at sub 4 here, which was the preexisting statute. It provides an insurer that has paid an environmental claim, received contribution from any other insurer that is liable or potentially liable. Now, that's what it was before, and you're saying that the amendment, which we just talked about, and so far as this case is concerned, does or does not change the meaning of what I just read. It does nothing to change that, Your Honor. The subsection 5.4 of Oregon Chapter's Law 799 defines a very limited subset in which the ECAA's substantive terms, including 465.480 sub 4, simply won't apply. Well, let me walk you through it. It's retroactive to all cases, putting aside this exception, right? Correct. So if your client's liability could now apply but for this section, right? Maybe I didn't say it right. What the statute did in 2003 is it made the rights of contribution retroactive. Assuming the defined right of contribution is limited by 465.480 sub 4, i.e., liable or potentially liable, satisfied, correct. Right. So now we get to the exception. And I say, but notwithstanding that provision, the retroactivity of the contribution provision, an insurer that is a party to an action based on an environmental claim for which a final judgment as to all insurers has not been entered, fireman's, by trial court on or before the effective date of this act, which would be, you know, fireman's, and in which a binding settlement has been reached on or before the effective date of this act, which is no binding settlement, before the effective date of this act, between the insured and at least one insurer that was a party to the action, then the insurer, which is fireman's, may not seek or obtain contribution from or allocation to the insured or any other insurer that prior to the effective date of this act reached a binding settlement with the insured as to the environmental claim. And so what it's saying is, look, we're making this retroactive, but all you people who entered into, you insurers who entered into settlements before this, we're not going to undo those settlements. You entered into those in good faith reliance upon their effect. So if a settlement as a matter of general law blocks their right of contribution, you wouldn't need this statutory provision. Well, I disagree with that premise, Judge. And here's why. Even insurers who settled prior to the ECAA, when the new law became effective, they could still be sued in contribution under the ECAA. They may well win the claim, but they're still exposed for the cost of litigating that issue. And this subpart four is dealing with the scenario where the insured had reached agreements with at least one insurer, and the insured in those agreements had indemnified those insurers. So should litigation be brought to say, oh, I understand that you settled before the ECAA. Whatever rights you thought you had, we now wish to contest your contribution rights because of the new law. Well, but it doesn't say between settlement, between insurers. It says whether the settlement has reached on or before the effective date of the 2003 Act between the insured, ED, and at least one insurer. Correct. And so that's NEMI and Oregon Auto. But Oregon Auto's settlement and NEMI Auto and NEMI Oil's scenario simply doesn't fall into the subpart at all. Because it didn't take place before the effective date of this Act. That's correct. And there wasn't, and the other aspects of the statute aren't applicable. So my point is that this exception to the retroactivity provision does not apply. If the exception to the retroactivity provision does not apply, that simply means that you must apply the substantive rules found in the other subpart. The assumption is that determining potential or liable or potentially liable somehow as a statement in the inverse as to what was intended by the retroactivity clause doesn't logically follow. It's not necessary to conclude that the legislature, by creating a simple subclass under subpart 5-4 that would not have to deal with the ECAA, also necessarily understood that other people would be subject to suit. But we're, if what you're saying is, and I think we're probably all in agreement, that this exception doesn't apply because there was no settlement before the effective date of the Act. So then you're saying, well, this exception doesn't apply, but there's another provision of law that says that the settlement does away with fireman's contribution rights. Right. What's that provision? Those are two separate provisions. That is 465, 480, 3A, which defines insurers who are subject to the Act, and it defines it as follows. These are the insurers who are subject to the new requirements of the ECAA. An insurer with a duty to pay a defense or indemnity cost or both to an insurer for an environmental point. But that's at the time of the occurrence. The duty under the policy is whether or not the policy covers it. And that obligation is stated here to be to the insurer. Right. But it seems to me that it has to be at the time of the occurrence. Are they liable to the insured for the occurrence? That can be one reading. But I note that both that provision and 465, 480, sub 4 both refer to a present duty. They use present tense language. 480, 3, sub A, defining the class of insurers, states that the law applies to an insurer, quote, with a duty, not who had a duty or at any time had a duty. 480, sub part 4, defining contributions, specifically says a contribution claim may be made against another insurer who, quote, is liable, potentially liable. 480, 4, subsection 4, permits an insurer to bring a contribution claim against a second insurer that was liable or potentially liable to the insured. Is rather than was, Your Honor. The language is.  Is liable or potentially liable. Correct. If your reading is correct, then no insured is going to step up to the plate and take care of the environmental cost because they would worry that there's a settlement with the people who don't step up. They totally lose their right to contribution. And if that happens, then there aren't going to be quick cleanups, which the statute was designed to protect. So it seems to me that if you're right, the whole intent of the legislature, to get an insurer to come in and take responsibility, do the cleanup, and then have actions for contribution is thwarted. I would respectfully disagree, Judge Moskowitz. The way that these sites get cleaned up is by insurance money. Right. And it is an aberrant case where you have a large corporation that has sufficient money to deal with the cost of immediate pollution. It's only by the availability. Right. That's what I'm saying. Picture three insurers covered over time, A, B, and C. And there's a requirement that there be a cleanup. Yes. Why is A, B, or C going to step up to the plate and do the cleanup if they're concerned that they pay all the costs and then the insurer is going to settle with one of the other two? Well, A, because they're legally obligated to do it, both by their policy terms and by the statute. And B, the existence of other insurance under Oregon law is an independent issue with respect to the obligations of insurer A or D. But I think you're missing my concern. My concern is A is going to say, let's sit back and wait to see what B and C does. B is going to say, let's sit back and wait to see what A and C does. And C is going to sit back, let's wait to see what A and B do. I would suggest respectfully, Your Honor, that it would be just the opposite. If an insurer acting reasonably who wishes to provide funding earlier rather than later and who wishes to resolve litigation rather than guarantee it has the protection by settling with the insured from not being subject to further exposure in a contribution claim, that insured then has the opportunity and motive to provide early funding. If the insurer, however, in the contra cannot provide funds on an early basis to the insured without having a complete approval of every insurer, whether or not they've even all been identified, that insurer will bear all the risk that it can't settle the case and protect itself. And that applies to all three, A, B, and C. Well, certainly, Your Honor. At the end of the day, in every case, whether it's an insurance case or any other case, the entity who chooses to delay the longest and litigate the longest will be exposed to the greatest exposure. No, because the first one is paid the cost of cleanup, and then they work out a settlement. B and C, if A comes up first, B and C work out a settlement. Your scenario assumes that an insurer has paid all sums without any reservation, has not reserved the right to get them back from the insured, and will not seek to do so. That is not the facts of this case. Fireman's Fund is actively litigating and sued NEMI for a declaration that it owes none of the money at issue here. The claim against Oregon Auto was only contingent. Should Fireman's Fund be found liable to NEMI, then it would like us to contribute to that. This is not a scenario where Fireman's Fund has agreed that it will pay everything and that it owes everything under the ECA or under its policy. But they're A, and you're B, and you're sitting back and saying, look, we'll pay $200,000. NEMI accepts it, and that essentially, according to you, blocks the rights of A, firemen's, to get their contribution from you. They stepped up to the plate. Well, they haven't stepped up to the plate. Well, they haven't. They paid, what, $2 million or so. They've recognized under a reservation of rights. Right. So while they're litigating the very issue of whether or not they owe it. So ultimately, NEMI, it turns out, have no coverage for the cost to clean this up. And so the question is, with respect to other insurers, other than the ones subject to litigation between the insurer and the insured, should NEMI be in a position to be able to get funds based on its contract rights and not have the other insurers say, we don't agree to that amount? And I submit that as long as the agreements reached are reasonable and in good faith, the other insurer is not harmed in any inequitable way. And I note that the trial court here made a specific factual finding that the settlement with Oregon Auto was both entered into in good faith and reasonably reflected the value of the coverage obligations to Oregon Auto.  I submit that there can be no inequity to any other insurer, simply because they have to meet their coverage obligations. But the district judge didn't apply the standards of the new act to decide how to allocate liability amongst the insurers. He just used kind of a good faith basis. There are standards in the act as to how you exercise discretion. On an insurer subject to contribution, that's correct, Your Honor. Right. But he ruled those did not apply, and therefore he did not reach those. Right. So what you're saying is, well, there's a good faith settlement, so it's the same thing, they paid their fair share of contribution. And I'm saying that the district judge didn't reach that issue by applying the statute. He didn't go through all the factors set forth in the statute and exercise his discretion. And I apologize if that was the impression I was giving. I was meaning to respond to your point that as a matter of policy, this will impair false or quick resolution of these cases. Insurers who enter into reasonable settlements, it happens all the time, and that's how we get these things concluded. Another insurer isn't aggrieved by the entry of a reasonable settlement because you've put forth a fair sum to reflect your coverage obligations. If they paid what the statute says they should pay. So in other words, if they paid their fair share under the statute. And if that is the standard, then no insurer will be paying in advance of completion of all contribution and declaratory action litigation because they cannot resolve their exposure until there's a judicial determination of the application of the statute. And we submit that it's the policy of this statute to empower insurers to get money on a prompt basis to remediate pollution at sites and not to encourage that all insurers and insurers will be subject to litigation through completion. Very good. Thank you, Mr. Baird. Thank you. If you want to finish your rebuttal, please. Just very quickly, Your Honor. And if you look at the legislative history of the Act, the one thing it was trying to deal with, it's actually mentioned in the legislative history, is the problem of the insured making a claim with multiple insurers and nobody stepping up, going and fighting defense costs, everything. First, the way the statute is structured is for one insured can be chosen. It pays everything. We've paid all defense costs, and you have to distinguish between defense and indemnity here. We're no longer fighting whether we owe defense costs in the underlying claim. We've paid all defense costs. And then to have basically the two parties who've paid nothing enter into a settlement that pays none of the costs for the claims is, I think, what the statute is not designed to allow. The statute was designed to allow the insurer who steps up to seek contribution and if you accept that liable or potentially liable means, if you settle, we're done, that would apply to both pre-Act settlements and post-Act settlements, and the Section 5.4 would have had no purpose whatsoever. You're asking us to reverse Judge Moskvin in this case, I gather, because you believe that the retroactivity of language is interfered with by the amendment in a way that renders it meaningless. Is that correct? And that that's not what the legislature intended? Let me see if I can follow that. We're asking for a reversal because we believe the amendment, and actually it's all one amendment, but it went through two stages. When I say the amendment, I mean the second stage. The first part was designed, as we've been discussing here, was designed to be sure that these insurance policies had been around for a long, long time before people were really worried about environmental issues, are going to be responsible for the cleanup of environmental costs, right? Everybody seems to be in agreement on that. What the disagreement seems to be is what is the effect of, and I want to be sure I'm saying this right because I have a lot of little subsections here, 465.480 sub 4 seems to limit what happens when an insurance company and insurers settle a claim. It limits the impact of discussions with other insurers. And I gather you're asking us to construe what Judge Masta did as being an incorrect construction of the statute, that in fact you ought to have the right to go against Oregon Auto without regard to the impact of that second amendment, we'll call it. Is that correct? Correct, Your Honor. Ultimately, you may not end up any differently. If we agreed with you and it went back, then Judge Mastin could decide under the standards and the statute that all they have to pay is $200,000 to you. It just doesn't go to EMEI Oil. Well, I'm not sure that will happen, Your Honor, because there was actually a prior ruling in this case when we argued those issues, and the Court decided that it was going to apply a quota allocation. All right. Very good. We thank you both for your argument in this highly technical case. Thank you, Your Honor. And this matter is submitted, and the Court will stand at recess.
judges: Thompson, Smith, Moskowitz